UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 04 2017

David J. Bradley, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. |
| § | |
| JUAN JOSE HERNANDEZ- § | 17 CR 005 |
| COMERMA § | |

## INFORMATION

THE UNITED STATES CHARGES:

### COUNT ONE
(Conspiracy – 18 U.S.C. § 371)

#### Introduction

At all times material to this Information:

1. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. Bariven S.A. ("Bariven") was the PDVSA procurement subsidiary responsible for equipment purchases. PDVSA and its wholly owned subsidiaries, including Bariven, were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A). PDVSA officers and

employees were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

2. At all relevant times, Abraham Jose SHIERA BASTIDAS ("SHIERA") was the owner of a number of other U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of the United States, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

3. At all relevant times, Roberto Enrique RINCON FERNANDEZ ("RINCON") was the owner of a number of U.S.-based energy companies, including several companies based in the Southern District of Texas, that supplied equipment and services to PDVSA, and a resident of Texas, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). RINCON and SHIERA worked together on a number of PDVSA contracts and contract bids.

4. "Shiera Company 3," a company whose identity is known to the United States, was organized under the laws of Florida and headquartered in Florida. Shiera Company 3 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Shiera Company 3

was partially owned and controlled by SHIERA and used by SHIERA to secure contracts with PDVSA.

5. Defendant **JUAN JOSE HERNANDEZ COMERMA** ("Defendant **HERNANDEZ**"), a resident of Broward County, Florida, and a U.S. lawful permanent resident since in or around February 2010, worked as an employee of SHIERA, including serving as the general manager of Shiera Company 3. In or around October 2009, Defendant **HERNANDEZ** became SHIERA's business partner, eventually acquiring a 17% ownership stake in Shiera Company 3. Defendant **HERNANDEZ** was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

6. At all relevant times, Moises Abraham MILLAN ESCOBAR ("MILLAN"), a resident of Venezuela and later the Southern District of Texas, was employed by, or worked as an independent contractor for SHIERA. MILLAN, who has been charged separately, acted as an agent of SHIERA's and RINCON's companies, including their U.S.-based companies, and was thus an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

7. At all relevant times, Alfonzo Eliezer GRAVINA MUNOZ ("GRAVINA"), a resident of the Southern District of Texas, was employed by

3

PDVSA or a wholly owned subsidiary thereof, including as a purchasing manager for a PDVSA subsidiary based in Houston, Texas. GRAVINA's job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects. GRAVINA, who has been charged separately, was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

8. "Official D," an individual whose identity is known to the United States, was at all relevant times employed by PDVSA or a wholly owned subsidiary thereof, including as a purchasing analyst for Bariven. Official D's job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects. Official D, who has been charged separately under seal, was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

### The Conspiracy

9. Beginning in at least 2008 and continuing through at least 2012, in the Southern District of Texas, and elsewhere, the defendant,

**JUAN JOSE HERNANDEZ COMERMA,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with SHIERA, RINCON, MILLAN,

and others known and unknown, to commit offenses against the United States, that is:

being domestic concern and an officer, director, employee, agent, and shareholder of a domestic concern, and together with a domestic concern, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Defendant **HERNANDEZ**, SHIERA, RINCON, their companies, and others in obtaining and retaining business for and with, and directing business to, SHIERA's and RINCON's

companies, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a).

## Purpose of the Conspiracy

10. The purpose of the conspiracy was for Defendant **HERNANDEZ**, **SHIERA**, **RINCON**, **MILLAN**, and their co-conspirators, to enrich themselves by obtaining and retaining lucrative energy contracts with PDVSA through corrupt and fraudulent means, including by paying bribes to PDVSA officials, including, but not limited to, GRAVINA and Official D.

## Manner and Means of the Conspiracy

11. The manner and means by which Defendant **HERNANDEZ** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

12. In order to obtain and retain business for and on behalf of SHIERA's and RINCON's companies, Defendant **HERNANDEZ**, together with others, including SHIERA, RINCON, and MILLAN, would and did discuss:

   a. the need to provide things of value to PDVSA officials;

   b. the identity of the PDVSA officials whom they would target;

   c. the particular things of value to provide to those officials; and

   d. the manner and means by which things of value would be provided.

13. Defendant **HERNANDEZ**, together with others, including SHIERA, RINCON, and MILLAN, would and did solicit and agree with PDVSA officials, on behalf of SHIERA's and RINCON's companies, that those companies would pay bribes based on a percentage of any contracts the PDVSA officials helped to award to SHIERA's and RINCON's companies, including Shiera Company 3.

14. Defendant **HERNANDEZ**, together with others, including SHIERA and RINCON, caused bribe payments to be wired from the bank accounts of SHIERA's companies to the bank accounts of PDVSA officials, their relatives, or other individuals or entities designated by the PDVSA officials who received the bribes.

15. Defendant **HERNANDEZ**, together with others, including SHIERA, RINCON and MILLAN, would and did provide to PDVSA officials things of value, including recreational travel, meals, and entertainment, in order to obtain and retain business on behalf of SHIERA's and RINCON's companies.

16. Defendant **HERNANDEZ**, together with others, including SHIERA and MILLAN, would and did attempt to conceal the bribery scheme by creating and using private e-mail accounts to communicate about the scheme.

### Overt Acts

17. In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the

Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

18. On or about October 21, 2008, GRAVINA sent an e-mail to Defendant **HERNANDEZ**, bearing the subject line, "Favor," in which GRAVINA requested that Defendant **HERNANDEZ** make a hotel reservation for him in New York City so that GRAVINA could visit a relative.

19. On or about October 21, 2008, Defendant **HERNANDEZ** responded to the e-mail referenced in Paragraph 18 above, forwarding a $1,093.13 hotel reservation for GRAVINA at the Marriott Marquis in New York City and stating to GRAVINA, "I Take care of you."

20. On or about February 17, 2011, Defendant **HERNANDEZ** sent an e-mail to MILLAN, copying two other SHIERA employees, bearing the subject line, as translated into English, "Payment of Allied Contributions related to the listed POs [Purchase Orders]." The co-conspirators frequently referred to the PDVSA officials to whom they were paying bribes as "aliados," or, as translated into English, "allies" or "allieds." In the e-mail, Defendant **HERNANDEZ** referenced several purchase orders and stated, as translated into English, "[a]s the below POs [purchase orders] deal with case crossover between [a SHIERA-owned company] and [a RINCON-owned company], there is a debate about who is responsible for making the payments to the allies, which of them in the chain of influence. We

should clarify this over the weekend with AS [SHIERA], RR [RINCON], and [another SHIERA employee]; while that happens, please put any payment by [the SHIERA-owned company] On Hold."

21. On or about December 6, 2011, Defendant **HERNANDEZ** sent an e-mail to MILLAN in which he forwarded a $14,502.29 hotel reservation for Official D at the Fontainebleau Hotel in Miami Beach, Florida, the cost of which was to be covered by one of SHIERA's companies.

22. On or about July 20, 2012, Defendant **HERNANDEZ** caused a wire transfer in the amount of $9,745.21 to be made from a bank account controlled by SHIERA to a bank account in the Southern District of Texas held jointly in the name of GRAVINA and a relative, in exchange for GRAVINA's assistance in connection with PDVSA contracts awarded to Shiera Company 3 and another of SHIERA's companies.

23. On or about September 12, 2012, Defendant **HERNANDEZ** caused a wire transfer in the amount of $7,782.31 to be made from a bank account controlled by SHIERA to a bank account in the Southern District of Texas held jointly in the name of GRAVINA and a relative, in exchange for GRAVINA's assistance in connection with PDVSA contracts awarded to Shiera Company 3.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## (Foreign Corrupt Practices Act – 15 U.S.C. § 78dd-2; 18 U.S.C. § 2)

24. Paragraphs 1 through 8 and 10 through 23 are realleged and incorporated by reference as though fully set forth herein.

25. On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendant,

### JUAN JOSE HERNANDEZ COMERMA,

being a domestic concern and an officer, director, employee, agent, and shareholder of a domestic concern, and by aiding and abetting a domestic concern, did willfully use and cause to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts

and decisions of such government and agencies and instrumentalities, in order to assist Defendant **HERNANDEZ**, SHIERA, SHIERA's companies, including Shiera Company 3, in obtaining and retaining business for and with, and directing business to SHIERA's companies, including Shiera Company 3, and others, to wit: on or about September 12, 2012, Defendant **HERNANDEZ** caused a wire transfer in the amount of $7,782.31 to be made from a bank account controlled by SHIERA to a bank account in the Southern District of Texas held jointly in the name of GRAVINA and a relative.

All in violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
## (28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

26.     Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendant,

**JUAN JOSE HERNANDEZ COMERMA,**

that in the event of his conviction of any of the offenses charged in Counts 1 and 2 of this Information, the United States intends to seek forfeiture of all property, real

or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment

27. Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of all property subject to forfeiture.

## Substitute Asset Provision

28. Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of defendant or his co-conspirators,

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third person;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

| | |
|---|---|
| KENNETH MAGIDSON<br>UNITED STATES ATTORNEY | ANDREW WEISSMANN<br>CHIEF, FRAUD SECTION<br>CRIMINAL DIVISION<br>DEPARTMENT OF JUSTICE |

BY: *[signature]*  BY: *[signature]* for:

JOHN P. PEARSON  AISLING O'SHEA
DEPUTY CHIEF  JEREMY R. SANDERS
ROBERT S. JOHNSON  TRIAL ATTORNEYS
ASSISTANT UNITED STATES
ATTORNEY